UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHAWN LANDAU,

                Plaintiff,

-against-

GOOD SAMARITAN HOSPITAL, BON
SECOURS CHARITY HEALTH SYSTEM
INC., and WESTCHESTER COUNTY
HEALTH CARE CORPORATION d/b/a
WESTCHESTER MEDICAL CENTER
HEALTH NETWORK,

                Defendants.

**7:23-cv-7227 (NSR) (JCM)**

**PLAINTIFF'S MEMORANDUM OF
LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED
COMPLAINT PURSUANT TO RULE
12(b)(6)**

**ORAL ARGUMENT REQUESTED**

*For the Plaintiff:*

Rebekah Joab
Diane Johnston
Jennifer Sinton
Legal Action Center
225 Varick St., 4th Floor
New York, New York 10014
(212) 243-1313
rjoab@lac.org


David John Hommel
Eisenberg & Baum, LLP
24 Union Square East, PH
New York, NY 10003
(212) 353-8700
DHommel@eandblaw.com

## <u>TABLE OF CONTENTS</u>

<b>Page</b>

I.   PRELIMINARY STATEMENT ................................................................................1

II.  STATEMENT OF FACTS .....................................................................................3

III. STANDARD OF REVIEW .....................................................................................4

IV.  ARGUMENT .........................................................................................................5

  A.  **Defendants discriminated against Mr. Landau when they denied him
     health services because of his disability.** ...............................................................6

    1.  **Defendants' refusal to administer methadone was both disparate
       treatment on the basis of disability and a failure to accommodate
       Mr. Landau's disability.** ..............................................................................7

       i.   *Defendants' refusal to administer methadone is disparate treatment.* ......7

       ii.  *Defendants refused to accommodate Mr. Landau's disability.* ................10

    2.  **Defendants' denial of home-based administration of intravenous
       antibiotics via a PICC line was both disparate treatment on the
       basis of disability and a failure to accommodate Mr. Landau's disability.** ...........11

       i    *Defendants' denial of home-based administration of intravenous
         antibiotics via a PICC line is disparate treatment.* .................................12

       ii.  *Defendants refused to accommodate Mr. Landau's disability.* ................14

    3.  **Mr. Landau alleges disability discrimination, not a disagreement with a
       medical judgment.** .......................................................................................15

       i.   *Defendants' refusal to administer methadone was not a medical judgment.* ...........17

       ii.  *Defendants' denial of home-based administration of intravenous
         antibiotics via a PICC line was unrelated to the medical decision about
         proper care for Mr. Landau's infections.* ...............................................18

  B.  **Deliberate indifference is not an element of any claim in this case; it is only a
     prerequisite for compensatory damages under the RA.** .................................21

  C.  **The frequency of Mr. Landau's visits to the Hospital is irrelevant to his
     discrimination allegations.** ...............................................................................22

ii

# TABLE OF AUTHORITIES

**Page (s)**

**Statutes**

29 U.S.C. § 794 (RA)..................................................................................................... 1

42 U.S.C. § 12132 ........................................................................................................ 1

42 U.S.C. § 18116 (ACA).............................................................................................. 1

42 U.S.C. §12182 ("Title III") ............................................................................... 1, 10, 14

Fed. R. Civ. P 8(a)(2) .................................................................................................... 5

Fed. R. Civ. P. 12(b)(6).................................................................................................. 4

Fed. R. Civ. P. 8(a)(1)–(2) ........................................................................................... 22

N.Y. Exec. Law § 290, *et seq* (NYSHRL)....................................................................... 1

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................................... 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................... 4, 5

*Bragdon v. Abbott*,
524 U.S. 624 (1998)...................................................................................................... 6

*Bravin v. Mount Sinai Med. Ctr.*,
58 F. Supp. 2d 269 (S.D.N.Y. 1999).............................................................................. 22

*Camarillo v. Carrols Corp.*,
518 F.3d 153 (2d Cir. 2008)........................................................................................... 6

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)........................................................................................... 4

*Childress v. Fox Assocs., LLC*,
No. 16 CV 931 CDP, 2018 WL 1858157 (E.D. Mo. Apr. 18, 2018)
*aff'd*, 932 F.3d 1165 (8th Cir. 2019) ........................................................................... 23

*Cushing v. Moore*,
970 F.2d 1103 (2d Cir. 1992)......................................................................................... 16

*Davis v. Wild Friends Foods, Inc.*,
No. 22-CV-04244 (LJL), 2023 WL 4364465 (S.D.N.Y. July 5, 2023)................................. 10, 14

*Doe v. Deer Mountain Day Camp, Inc.*,
682 F. Supp. 2d 324 (S.D.N.Y. 2010)......................................................... 7, 10, 12, 21

*Doe v. Pfrommer*,
148 F.3d 73 (2d Cir. 1998)................................................................................................ 8

*Doherty v. Bice*,
No. 18-CV-10898 (NSR), 2020 WL 5548790 (S.D.N.Y. Sept. 16, 2020) .................................... 8

*Donlon v. Hillsborough Cty.*,
No. 18-CV-549-LM, 2019 WL 2062436 (D.N.H. May 9, 2019) .................................................. 2

*Fantasia v. Montefiore New Rochelle*,
No. 19 Civ. 11054, 2022 WL 294078 (S.D.N.Y. Feb. 1, 2022) ................................................ 5, 6

*Fulton v. Goord*,
591 F.3d 37 (2d Cir. 2009)............................................................................................... 6

*Goldman v. Brooklyn Ctr. for Psychotherapy, Inc.*,
No. 15-CV-2572 (PKC) (PK), 2018 WL 1747038 (E.D.N.Y. Apr. 11, 2018) ........................... 22

*Green v. City of New York*,
465 F.3d 65 (2d Cir. 2006)........................................................................................... 6, 13

*Griffin v. Doe*,
71 F. Supp. 3d 306 (N.D.N.Y. 2014) .............................................................................. 16

*Henrietta D. v. Bloomberg*,
331 F.3d 261 (2d Cir. 2003).................................................................................... passim

*Henrietta D. v. Giuliani*,
119 F. Supp. 2d 181 (E.D.N.Y. 2000),
*aff'd sub nom. Henrietta D. v. Bloomberg*, 331 F.3d 261 (2d Cir. 2003).................................... 10

*Howe v. Hull*,
874 F. Supp. 779 (N.D. Ohio 1994)................................................................................... 2

*Loeffler v. Staten Island Univ. Hosp.*,
582 F.3d 268 (2d Cir. 2009)...................................................................................... 21, 22

*M.C. v. Jefferson Cnty., New York*,
No. 6:22-CV-00190, 2022 WL 1541462 (N.D.N.Y. May 16, 2022)........................................ 6, 8

*McGugan v. Aldana-Bernier*,
752 F.3d 224 (2d Cir. 2014)............................................................................... 15, 16, 17

*Nieves v. Plaza Rehab. & Nursing Ctr.*,
No. 20-cv-01191 (JLR) (OTW), 2023 WL 4763945 (S.D.N.Y. July 26, 2023)......................... 22

*P.G. v. Jefferson Cnty., New York*,
No. 5:21-CV-388, 2021 WL 4059409 (N.D.N.Y. Sept. 7, 2021)................................................. 8

*Pesce v. Coppinger*,
355 F. Supp. 3d 35 (D. Mass 2018) .................................................................................... 8, 18

*Proctor v. Prince George's Hosp. Ctr.*,
32 F. Supp. 2d 820 (D. Md. 1998)............................................................................................ 23

*Rodriguez v. City of New York*,
197 F.3d 611 (2d Cir. 1999).......................................................................................................... 2

*PGA Tour, Inc. v. Martin*,
532 U.S. 661 (2001)..................................................................................................................... 21

*Shomo v. City of New York*,
579 F.3d 176 (2d Cir. 2009)........................................................................................................... 7

*Smith v. Aroostook Cnty.*,
376 F. Supp. 3d 146 (D. Me.),
*aff'd*, 922 F.3d 41 (1ˢᵗ Cir. 2019) ................................................................. 8, 11, 13, 14

*Sumes v. Andres*,
938 F. Supp. 9 (D.D.C. 1996) ....................................................................................................... 2

*Tesoriero v. Syosset Cent. Sch. Dist.*,
382 F. Supp. 2d 387 (E.D.N.Y. 2005) ....................................................................................... 22

*United States v. Asare*,
476 F. Supp. 3d 20 (S.D.N.Y. 2020)............................................................................. 6, 10, 12

*United States v. Asare*,
No. 15 Civ. 03556 (AT) (AJP), 2017 WL 11567941 (S.D.N.Y. Mar. 2, 2017) .................... 18, 20

*United States v. Asare*,
No. 15 Civ. 3556, 2018 WL 2465378 (S.D.N.Y. June 1, 2018)................................................. 21

*Zlotnick v. Crystal Run Vill., Inc.*,
No. 21 Civ. 1001 (PED), 2021 WL 4993712 (S.D.N.Y. Oct. 27, 2021) ......................... 15, 16, 17

## **Other Authorities**

28 C.F.R. § 35.130 (ADA Title II) ...................................................................................... 10, 14

28 C.F.R. § 36.201 et seq. (ADA Title III) ................................................................................ 10

28 C.F.R. § 36.202(b) ...................................................................................................... 10, 14

28 C.F.R. § 36.204 ................................................................................................................. 10

28 C.F.R. § 36.208(c) ............................................................................................................ 21

28 C.F.R. § 36.301(a) ............................................................................................................ 14

45 C.F.R. § 84.4 (RA) ...................................................................................................... 10, 14

88 Fed. Reg. 63392, 63403 (proposed Sep. 14, 2023) (to be codified at 45 C.F.R. pt. 84).......... 13

## I.    <u>PRELIMINARY STATEMENT</u>

In August 2020, January 2021, and August 2021, Plaintiff Shawn Landau ("Mr. Landau") received treatment from Defendants at Good Samaritan Hospital ("the Hospital") for serious infections stemming from diabetic ulcers on his left foot.[1] Dkt. 22 ¶¶ 65, 124, 141. Unrelated to the infections for which he received treatment, Mr. Landau is in recovery from opioid use disorder ("OUD") and is treated with methadone, one of the three FDA-approved types of medication for opioid use disorder ("MOUD"). *Id.* ¶¶ 19–21, 39. While Mr. Landau was admitted to the Hospital, Defendants refused to administer methadone to him because it was medication needed to treat his highly stigmatized disability. *Id.* ¶¶ 29–30. Additionally, after Mr. Landau was prescribed intravenous antibiotics for treatment of his infections, Defendants, calling him a "junkie," categorially denied him access to home-based administration of intravenous antibiotics via a peripherally inserted central catheter ("PICC line") because of his OUD. *Id.* ¶¶ 31–32, 85, 88, 125. Defendants' refusal to provide methadone and their denial of home-based administration of intravenous antibiotics via a PICC line constitute disparate treatment and violated Defendants' obligation to accommodate Mr. Landau's disability. Due to this disability discrimination, Mr. Landau sued Defendants under Titles II and III of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("RA"), Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), and the New York State Human Rights Law ("NYSHRL").[2]

---

[1] Defendants are Good Samaritan Hospital, Bon Secours Charity Health System, Inc., and Westchester County Health Care Corporation d/b/a Westchester Medical Center Health Network.

[2] 42 U.S.C. §§ 12132, 12182 (ADA); 29 U.S.C. § 794 (RA); 42 U.S.C. § 18116 (ACA); N.Y. Exec. Law § 290, *et seq* (NYSHRL).

In moving to dismiss the First Amended Complaint ("FAC"),[3] Defendants fundamentally misunderstand this case. The case is not about medical malpractice; it is about Mr. Landau's civil rights. Mr. Landau has plausibly alleged that Defendants denied him the full and equal enjoyment of their services, and otherwise discriminated against him, based on stigma surrounding OUD and without any bona fide medical reasons for their differential treatment. More specifically, Defendants engaged in disparate treatment and failed to accommodate Mr. Landau's disability. Enshrined in the patients' bill of rights, and according to anti-discrimination laws, Mr. Landau expected an equal opportunity to enjoy the benefits and services that non-disabled patients enjoy at the Hospital. As the Second Circuit has explained, the ADA and its counterparts ensure that "a particular service provided to some not be denied to disabled people." *Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999).[4] Thus, contrary to Defendants' arguments, this is not "the federalization of routine malpractice claims." Defs.' Br. at 11. As is plain from the pleadings, Mr. Landau does not allege inadequate medical care for his foot infection or OUD; rather, he alleges discriminatory treatment because of his OUD. For these reasons and others to follow, the Court should deny Defendants' motion in its entirety.

---

[3] Defendants seek to dismiss the First Amended Complaint, Dkt. 22, filed October 11, 2023, which is the operative pleading in this case.

[4] Courts around the country have followed suit. *Donlon v. Hillsborough Cty.*, No. 18-CV-549-LM, 2019 WL 2062436, at *9 (D.N.H. May 9, 2019) (concluding that the plaintiff "state[d] a claim of discrimination under Title II of the ADA" because of allegations "that defendants negatively stereotyped [the plaintiff] because of her disability"); *Sumes v. Andres*, 938 F. Supp. 9, 12 (D.D.C. 1996) (ruling in favor of the plaintiff on an RA claim because there was "no bona fide medical reason for refusing to treat plaintiff" and the defendant did so simply "because she was deaf") (citation omitted); *Howe v. Hull*, 874 F. Supp. 779, 789 (N.D. Ohio 1994) (finding "sufficient evidence to preclude a grant of summary judgment on" an ADA claim in part because the "the defendant, despite the articulated reasons for the transfer, improperly considered [the patient's] HIV status").

## II.     STATEMENT OF FACTS

Mr. Landau is a person in recovery from OUD and takes prescribed methadone—a medication that has allowed him to achieve and maintain recovery. Dkt. 22 ¶ 21. Mr. Landau has sought ongoing care from Defendants for treatment of several health conditions, including serious foot infections stemming from diabetic ulcers. *Id*. ¶ 25. From August 19–26, 2020, and August 4–12, 2021, Mr. Landau was admitted to the Hospital for treatment of his diabetes-related infections. *Id*. ¶¶ 65, 139–41. During both admissions, Defendants refused to administer methadone, a medication they knew Mr. Landau was taking as prescribed to treat his disability of OUD. *Id*. ¶¶ 66, 142. MOUD, including methadone, is a life-saving treatment and the only evidence-based treatment for OUD. *Id*. ¶¶ 20, 38, 39, 44. It is appropriate and essential that MOUD be continued when patients taking it are admitted to hospitals, as abrupt discontinuance of MOUD leads to withdrawal—a serious, painful, and sometimes fatal medical condition—and interruption of treatment has been shown to increase a person's mortality by at least three times. *Id*. ¶¶ 45–49. Despite clear guidelines that methadone be continued in hospital settings, healthcare providers often hold negative and stigmatizing attitudes toward people with OUD that result in suboptimal care and unwillingness to treat OUD with evidence-based treatment. *Id*. ¶¶ 49, 34–37.

Additionally, from August 19–26, 2020, and January 18–21, 2021, while Mr. Landau was admitted to the Hospital for treatment of his diabetes-related infections, his infectious disease doctors prescribed him long-term intravenous antibiotics to be taken following his discharge. *Id*. ¶¶ 74–75, 124–25. Outpatient long-term intravenous antibiotics are most commonly administered at home via PICC lines, a safe and effective treatment modality for serious infections. *Id*. ¶¶ 54, 58. People who have a history of OUD are eligible for home-based antibiotic administration via PICC lines and should have the same access to the modality as patients without a history of

substance use. *Id.* ¶¶ 62–64. However, upon discharge on August 26, 2020, and January 21, 2021, Defendants denied Mr. Landau access to home-based administration of intravenous antibiotics via a PICC line because of his history of OUD. *Id.* ¶¶ 65, 74–102, 124–25.

On August 26, 2020, after Mr. Landau had a PICC line placement procedure, a question was presented to the care management team—primarily comprised of social workers and nurses––about his former substance use. *Id.* ¶¶ 77, 79. A social worker told Mr. Landau he could not go home with the PICC line because of his prior use. *Id.* ¶¶ 80, 81. The discharge doctor confirmed to Mr. Landau that it was hospital policy to deny PICC lines to people with a history of OUD. *Id.* ¶¶ 83–85. When Mr. Landau asked why, the discharge doctor said Mr. Landau would use the PICC line to inject drugs and stated, "I won't lose my license because of some junkie." *Id.* ¶¶ 86–88. After several conversations with the care management team about his recovery, Defendants removed the PICC line and denied Mr. Landau home-based intravenous antibiotic administration. *Id.* ¶¶ 90–101. Several months later, on January 21, 2021, after Mr. Landau was prescribed continuing intravenous antibiotics, Defendants again denied him home-based administration of intravenous antibiotics via a PICC line because of his OUD. *Id.* ¶ 125.

## III.    STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(6), a complaint must only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citation omitted). A complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant

fair notice of what the claim is and the grounds on which it rests." *Twombly*, 550 U.S. at 555 (quotation and citation omitted); Fed. R. Civ. P 8(a)(2). Defendants' Motion to Dismiss does not attack the sufficiency of Mr. Landau's factual allegations and, as such, presents no issue of "plausibility" under *Twombly* and its progeny. Rather, Defendants argue that the laws at issue do not provide relief for the circumstances alleged. However, Mr. Landau has sufficiently detailed allegations that support cognizable claims of discrimination.

**IV.    ARGUMENT**

Mr. Landau alleges multiple violations of federal and state laws that prohibit disability discrimination, and so contrary to Defendants' contention, this is not a case where Mr. Landau is quarreling with the quality of his medical care. Defendants do not contest that Mr. Landau is a qualified individual with a disability or that Defendants are subject to the anti-discrimination laws. Defendants' sole argument—that Mr. Landau does not allege he was discriminated against because of his disability—is plainly incorrect given the many allegations in the FAC that Defendants failed to administer medication to Mr. Landau because it was needed to treat his highly stigmatized disability and denied him home-based administration of intravenous antibiotics via a PICC line because of his OUD. Defendants' citations to inapposite case law do not support the dismissal of Mr. Landau's FAC, and the motion should be denied.

Courts generally analyze ADA, RA, ACA, and NYSHRL claims coextensively unless a difference is pertinent. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003); *Fantasia v. Montefiore New Rochelle*, No. 19 Civ. 11054, 2022 WL 294078, at *8, *10 (S.D.N.Y. Feb. 1, 2022). To state a claim for violations of Titles II and III of the ADA, the RA, the ACA, and the NYSHRL, a plaintiff must allege that (1) they are a qualified individual with a disability, (2) defendants are subject to the acts, and (3) defendants denied plaintiff the benefits of its services,

the full and equal enjoyment of its services, or otherwise discriminated against them because of their disability. *See Henrietta D.*, 331 F.3d at 272; *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008); *Fantasia*, 2022 WL 294078 at *5. Defendants do not dispute the first two elements, they only argue that Mr. Landau has not alleged he was denied the benefits of their services, the full and equal enjoyment of their services, or otherwise discriminated against, because of his disability. Mr. Landau sufficiently details allegations against Defendants which support cognizable claims of disparate treatment and failure to make a reasonable accommodation. *See Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (explaining allegations that state a claim under the ADA and RA). As such, Defendants' Motion to Dismiss should be denied.

### A. Defendants discriminated against Mr. Landau when they denied him health services because of his disability.

The Supreme Court has established that disability-based discrimination in healthcare settings violates anti-discrimination laws. *See, e.g., Bragdon v. Abbott*, 524 U.S. 624, 624 (1998) (holding the ADA prohibits discrimination against any individual "on the basis of disability in the enjoyment of the services of any place of public accommodation by any person who operates [such] a place") (citation omitted). The Second Circuit and its trial courts have followed suit, finding discrimination when health services were denied because of disability. *See Green v. City of New York*, 465 F.3d 65, 76–78 (2d Cir. 2006) (finding genuine issues of material fact where plaintiff alleged he was denied access to the city's system for evaluating refusals to accept medical assistance based on stereotypes about his disability); *United States v. Asare*, 476 F. Supp. 3d 20, 34–35 (S.D.N.Y. 2020) (concluding that a cosmetic surgeon's policy of denying service to individuals who had HIV violated the ADA); *M.C. v. Jefferson Cnty., New York*, No. 6:22-CV-00190, 2022 WL 1541462, at *4 (N.D.N.Y. May 16, 2022) (finding plaintiffs' allegations that they were denied medical services by defendant's refusal to administer methadone in violation of the

6

ADA was likely to succeed on the merits).

Plaintiffs may state a claim of discrimination by alleging they were denied the full and equal enjoyment of services or benefits because of their disability. *Shomo v. City of New York*, 579 F.3d 176, 185–86 (2d Cir. 2009) (vacating dismissal of ADA and RA complaint where plaintiff alleged he was denied services because of his disability). Plaintiffs demonstrate that a defendant's treatment was "because of" disability through allegations that their "disabilities were a substantial cause of their inability to obtain services, or that that inability was not so remotely or insignificantly related to their disabilities as not to be 'by reason' of them." *Henrietta D.*, 331 F.3d at 279. Mr. Landau sufficiently pleads that he was denied the benefits and full and equal enjoyment of Defendants' services—and otherwise discriminated against—because of his disability. Dkt. 22 ¶¶ 28–32.

### 1. Defendants' refusal to administer methadone was both disparate treatment on the basis of disability and a failure to accommodate Mr. Landau's disability.

Defendants' refusal to administer methadone from August 19-26, 2020, and August 4-12, 2021, violated the ADA, RA, ACA, and NYSHRL by (1) subjecting Mr. Landau to disparate treatment and (2) failing to provide Mr. Landau a reasonable accommodation that would afford him meaningful access to Defendants' health services. *Id.* ¶¶ 29, 30, 66, 67, 142, 143, 148, 184.

*i.     Defendants' refusal to administer methadone is disparate treatment.*

A plaintiff can show disparate treatment in multiple ways, including (1) the denial of health services because of their disability, (2) that defendant acted with their disability in mind—including by acting with animus toward people with their disability, or (3) that defendant treated them differently than people without their disability. *See Doe v. Deer Mountain Day Camp, Inc.*, 682 F. Supp. 2d 324, 343 (S.D.N.Y. 2010) (holding a children's camp liable under the ADA for denying an HIV positive child admission solely based on his HIV status); *see also Doherty v. Bice*,

No. 18-CV-10898 (NSR), 2020 WL 5548790, at *7 (S.D.N.Y. Sept. 16, 2020); *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998). Mr. Landau pleads all of these in addition to other forms of disparate treatment discrimination.

First, Mr. Landau alleges that Defendants' refusal to administer methadone denied him health services because of his disability. In light of the way OUD is stigmatized and the withdrawal people with OUD suffer when their medication is abruptly discontinued, courts within the Second Circuit and elsewhere have found the denial of evidence-based medication to treat OUD is, in and of itself, evidence of disability-based discrimination. In *M.C.*, for example, plaintiffs who were denied continued medication for OUD upon incarceration established a substantial likelihood of success on the merits of their ADA claim. *M.C.,* 2022 WL 1541462, at *4. The court stated that "[t]he refusal to provide access to methadone deprives plaintiffs 'meaningful access' to Jefferson Correctional's healthcare services." *Id.*; *see also P.G. v. Jefferson Cnty., New York*, No. 5:21-CV-388, 2021 WL 4059409, at *4–5 (N.D.N.Y. Sept. 7, 2021) (holding that plaintiff's allegations of disability discrimination based on the denial of prescribed, necessary methadone was likely to succeed on the merits); *Pesce v. Coppinger*, 355 F. Supp. 3d 35, 47 (D. Mass 2018) (concluding that a facility's failure to provide methadone for OUD "is either arbitrary or capricious—as to imply that it was pretext for some discriminatory motive or discriminatory on its face") (quotation and citation omitted); *Smith v. Aroostook Cnty.*, 376 F. Supp. 3d 146, 159–60 (D. Me.), *aff'd*, 922 F.3d 41 (1st Cir. 2019) (observing that the withholding of prescribed MOUD is so unreasonable that it raises an inference of disability-based discrimination rather than a medical judgment subject to differing opinion). Here, Mr. Landau alleges that Defendants refused to administer prescribed, necessary medication because it was medication to treat his disability of OUD, which is highly stigmatized such that healthcare providers are often unwilling to treat it with evidence-based

medications. Dkt. 22, ¶¶ 3, 30, 34–38. Accepting these facts as true, they are more than sufficient to support Mr. Landau's claim that he was denied the full and equal enjoyment of Defendants' health services because of his disability. For this reason alone, Defendants' Motion to Dismiss should be denied.

Second, Mr. Landau alleges that in refusing to administer the medication needed to treat his disability, Defendants acted with his disability in mind or with animus toward people with his disability: "Defendants denied this medication because it is used to treat OUD, a stigmatized disability." Dkt. 22 ¶ 30. Mr. Landau details the stigma attached to OUD within the healthcare system and explains this stigma frequently leads to negative attitudes in healthcare providers and an unwillingness to treat OUD with medication—methadone or suboxone—which is the only evidence-based form of treatment for OUD. *Id.* ¶¶ 33–37.

Third, Mr. Landau alleges that Defendants treated him less favorably than others because of his disability—an allegation that plainly supports a disparate treatment claim. *See Pfrommer,* 148 F.3d at 82 (explaining that a plaintiff supports their claim of disparate treatment when they allege that services provided to non-disabled individuals were denied to disabled individuals because of their disability). Here, Mr. Landau alleges that normally "Defendants ensure continuation of appropriate, prescribed medications that patients were taking upon admission" but did not do so for him "because it was addiction medication needed to treat his disability." Dkt. 22 ¶¶ 67, 143. Moreover, Mr. Landau alleges the denials were pursuant to a policy, procedure, or practice that singles out OUD and fails to ensure consistent and appropriate administration of medication to treat his disability. *Id.* ¶¶ 148, 169, 187, 205, 223, 240.

Additionally, Mr. Landau supports his claims of disparate treatment through allegations that Defendants' refusal to administer methadone violated multiple statutory and regulatory

provisions of the ADA and RA that enumerate discriminatory practices. *Id*. ¶¶ 168, 186, 204; 42

U.S.C. § 12182 (ADA Title III); 28 C.F.R. § 36.201 et seq. (ADA Title III), 28 C.F.R. § 35.130

(ADA Title II); 45 C.F.R. § 84.4 (RA). For example, Mr. Landau alleges that Defendants' refusal

to administer methadone failed to afford him benefits and services equal to those afforded to others,

Dkt. 22 ¶¶ 168(b), 186(b), 204(b); 42 U.S.C. § 12182(b)(1)(A)(ii); 28 C.F.R. § 36.202(b); 28

C.F.R. § 35.130(b)(1)(ii); 45 C.F.R. 84.4(b)(1)(ii), and that Defendants' methods of administration

subjected him to discrimination. Dkt. 22 ¶¶ 168(f); 186(c), 204(d); 42 U.S.C. § 12182(b)(1)(D);

28 C.F.R. § 36.204; 28 C.F.R. § 35.130(b)(3)(i); 45 C.F.R. § 84.4(b)(4).[5] Mr. Landau sufficiently

alleges that Defendants' refusal to administer methadone constitutes disparate treatment.

      ii.    *Defendants refused to accommodate Mr. Landau's disability.*

"A 'reasonable accommodation' is one that gives the otherwise qualified plaintiff with

disabilities 'meaningful access' to the program or services sought." *Henrietta D.*, 331 F.3d at 282.

To state a claim of failure to reasonably accommodate, a plaintiff alleges that they "[(1) suffer]

from a disability (2) known to the defendant, for which (3) a reasonable accommodation is

necessary for the plaintiff's enjoyment of [services] . . . . and (4) the defendant refused the

accommodation." *Davis v. Wild Friends Foods, Inc.*, No. 22-CV-04244 (LJL), 2023 WL 4364465,

at *7 (S.D.N.Y. July 5, 2023) (quotation and citation omitted).

Mr. Landau sufficiently states a claim for failure to provide a reasonable accommodation.

Dkt. 22 ¶¶ 66, 142. He asserts that during two hospitalizations—from August 19-26, 2020, and

---

[5] The Second Circuit looks to the implementing regulations of the ADA and the RA in defining discrimination. *See Henrietta D. v. Giuliani,* 119 F. Supp. 2d 181, 205 (E.D.N.Y. 2000), *aff'd sub nom. Henrietta D. v. Bloomberg*, 331 F.3d 261 (2d Cir. 2003) ("These regulations are entitled to controlling weight unless they are arbitrary, capricious or manifestly contrary to the statute." (quotation and citation omitted)); *see also Asare*, 476 F. Supp. 3d at 34; *Deer Mountain Day Camp, Inc.*, 682 F. Supp. 2d at 342–43.

August 4-12, 2021—his disability of OUD was known to Defendants, that without methadone he was forced into mentally and physically painful withdrawal, and that Defendants denied his requests for methadone administration. *Id.* ¶¶ 66, 68, 142, 144. Practices that deny MOUD and force people into withdrawal have been found likely to succeed on the merits based on claims of failure to provide a reasonable accommodation. *See, e.g.*, *Smith*, 376 F. Supp. 3d at 160 ("The Plaintiff made multiple clear requests to be exempted from the Jail's practice of prohibiting buprenorphine and requiring individuals on MAT to undergo withdrawal. . . . Without her desired accommodation, the Plaintiff will be deprived of the only form of treatment shown to be effective at managing her disability and therefore will be denied 'meaningful access' to the Jail's health care services.").

Forcing Mr. Landau into withdrawal while he was receiving care for his infection cannot be considered meaningful access to health services. Without access to his medication, Mr. Landau experienced serious symptoms of withdrawal including nausea, vomiting, headaches, anxiety, and sleeplessness, as well as mental anguish. Dkt. 22 ¶¶ 68–70; 144–146. Just as forcing people with AIDS to sit in infection-ridden waiting rooms was a failure of the City of New York to provide meaningful access to public benefits and services, "with devastating consequences," *Henrietta D.*, 331 F.3d at 269, forcing Mr. Landau to endure MOUD withdrawal and potentially life-threatening circumstances was Defendants' failure to provide him with meaningful access to its health services.

## 2. Defendants' denial of home-based administration of intravenous antibiotics via a PICC line was both disparate treatment on the basis of disability and a failure to accommodate Mr. Landau's disability.

Defendants' denial of home-based administration of intravenous antibiotics via a PICC line on August 26, 2020, and January 21, 2021, violated the ADA, RA, ACA, and NYSHRL by (1)

11

subjecting Mr. Landau to disparate treatment and (2) failing to provide Mr. Landau a reasonable accommodation that would afford him meaningful access to Defendant's health services. *Id.* ¶¶ 166–168, 172, 184–86, 190, 202–04, 208, 221–22, 226, 238–39, 243.

    i.   *Defendants' denial of home-based administration of intravenous antibiotics via a PICC line is disparate treatment.*

The Second Circuit has held that it violates the ADA and its counterparts to provide a service to some people but not provide that service to people with disabilities. *See Rodriguez*, 197 F.3d at 618. Mr. Landau alleges Defendants did exactly that when they categorically denied him access to a particular treatment modality—home-based administration of intravenous antibiotics via a PICC line—to which patients without his disability had access. Dkt. 22 ¶¶ 85, 125. He alleges that the denials were pursuant to a discriminatory policy, procedure, and practice that specifically excludes people with OUD discharged from inpatient from the benefit and service of home-based administration of intravenous antibiotics via PICC lines. *Id.* ¶ 150; *see also id.* ¶¶ 31, 32, 85,171, 189, 207, 225, 242.[6] In *Asare*, the court held that defendant's policy of categorically denying cosmetic services to individuals with HIV, which was not medically necessary, violated the ADA. *Asare*, 476 F. Supp. 3d at 34. Mr. Landau's allegations are the same: he was categorically denied health services because of his stigmatized disability.

Mr. Landau also supports his claims of disparate treatment through his allegations that Defendants acted with his disability in mind, or with animus toward people with his disability, when denying him home-based administration of intravenous antibiotics via a PICC line. *See Deer Mountain Day Camp, Inc.*, 682 F. Supp. 2d at 343. That a defendant acted with a plaintiff's

---

[6] Defendants suggest that Mr. Landau does not allege that Defendants' policy, procedure, and practice is discriminatory. Defs.' Br. at 8. However, Plaintiff alleges exactly that. Dkt. 22 ¶ 150.

disability in mind, may be evidenced through their stigmatizing comments and assumptions about a person's disability. *See Smith*, 376 F. Supp. 3d at 160 (concluding that plaintiff was likely to succeed on the merits of her ADA claim based on allegations that defendant's denial of care was based on apathy toward her disability of OUD, an apathy the court noted was consistent with broader stigma against MOUD). In *Green*, 465 F.3d at 77–78, the Second Circuit found that defendant's decision to ignore plaintiff's refusal of emergency care raised genuine issues of material fact where there was evidence that the decision was based on stereotypical assumptions about the plaintiff's disability, rather than on legitimate medical considerations. The federal agency that enforces the RA—the U.S. Department of Health and Human Services ("HHS")—has also made clear that stigmatizing assumptions about an individual's disability can constitute discrimination in healthcare settings. HHS recently issued proposed rules to underscore the RA's preexisting coverage within healthcare settings. The preamble explains that "providers do not make legitimate medical judgments when they base decisions on . . . . [b]ias or stereotypes about a patient's disability . . . . [Case law does not] suggest that bias is permissible under section 504 simply because there is a relationship between a sought-after medical treatment and an underlying disability." Discrimination on the Basis of Disability in Health and Human Service Programs or Activities, 88 Fed. Reg. 63392, 63403 (proposed Sep. 14, 2023) (to be codified at 45 C.F.R. pt. 84) (quotation and citation omitted).

Mr. Landau alleges that on August 26, 2020, when he asked why Defendants would not discharge him with the PICC line, the discharge doctor said he assumed that Mr. Landau would inject drugs into the PICC line and stated, "I won't lose my license because of some junkie." Dkt. 22 ¶¶ 85–88. Like the plaintiff in *Green*, Mr. Landau has alleged that the denial of home-based administration of intravenous antibiotics via a PICC line was premised on stigmatizing

assumptions about his disability and overt animus for Mr. Landau as a person with OUD.

Finally, Mr. Landau also supports his claims of disparate treatment by alleging that Defendants' denial of home-based administration of intravenous antibiotic via a PICC line constitutes violations of specific activities prohibited as discriminatory by statutory and regulatory provisions of the ADA and RA. Dkt. 22 ¶¶ 168(a)–(f), (h); 186(a)–(d); 204(a)–(f). Among his claims, Mr. Landau alleges that Defendants' denial failed to afford him benefits and services equal to those afforded to others, Dkt. 22 ¶¶ 168(b), 186(b), 204(b); 42 U.S.C. § 12182(b)(1)(A)(ii); 28 C.F.R. § 36.202(b); 28 C.F.R. § 35.130(b)(1)(ii); 45 C.F.R. 84.4(b)(1)(ii), applied eligibility criteria that screen out people with OUD, Dkt. 22 ¶¶ 168(h), 186(d); 42 U.S.C. § 12182(b)(2)(A)(i); 28 C.F.R. § 36.301(a); 28 C.F.R. § 35.130(b)(8), and otherwise limited his enjoyment of the opportunities enjoyed by others. Dkt. 22 ¶¶ 168(e), 204(e); 28 C.F.R. § 35.130(b)(1)(vii); 45 C.F.R. § 84.4(b)(1)(vii). Mr. Landau sufficiently alleges that Defendants' denials constitute disparate treatment.

### ii.    *Defendants refused to accommodate Mr. Landau's disability.*

Mr. Landau also sufficiently states a claim for failure to provide a reasonable accommodation by alleging that while being treated by Defendants for diabetes-related foot infections, (1) he had the disability of OUD, (2) Defendants knew he had OUD, (3) he requested a PICC line so he could receive home-based administration of antibiotics, which would allow him to stay in his home and not travel on his seriously wounded foot, and (4) Defendants denied an accommodation to their policy excluding people discharged from inpatient with a history of OUD from PICC line placement and home-based intravenous antibiotic administration. Dkt. 22 ¶¶ 96, 125, 127, 142, 172, 190, 208, 226, 243; *see Wild Friends Foods, 2023 WL 4364465, at *7; Smith*, 376 F. Supp. 3d at 160–61 (finding a likelihood of success on theory that failure to provide an

14

accommodation from a categorical policy or practice that applies to people with a specific disability can violate the ADA). Mr. Landau details the physical, psychological, and practical harm he experienced without access to home-based intravenous antibiotic administration via a PICC line. Dkt. 22 ¶¶ 107–121; 130–132. The denials of reasonable accommodations deprived Mr. Landau meaningful access to Defendants' health services.

### 3. Mr. Landau alleges disability discrimination, not a disagreement with a medical judgment.

Defendants grossly mischaracterize Mr. Landau's claims as a disagreement with the medical judgments of his healthcare providers, incorrectly asserting that Mr. Landau has not alleged that Defendants' refusals to administer methadone and denials of home-based administration of intravenous antibiotics via a PICC line were because of his disability. Defs.' Br. at 7, 8, 9; *but see* Dkt. 22 ¶¶ 28–32.

Defendants rely mainly on *McGugan v. Aldana-Bernier*, 752 F.3d 224 (2d Cir. 2014), and *Zlotnick v. Crystal Run Vill., Inc.*, No. 21 Civ. 1001 (PED), 2021 WL 4993712, at *1 (S.D.N.Y. Oct. 27, 2021), which are readily distinguishable from Mr. Landau's case. In *McGugan*, the plaintiff was admitted to defendant's hospital for evaluation of a psychiatric condition—the same condition on which her claims of disability discrimination were based. *McGugan*, 752 F.3d at 232. She alleged that defendants inappropriately and forcibly medicated her following a psychiatric evaluation through which they determined she was a danger to herself or others, in violation of the RA. *Id.* at 228. The court held that she did not state a claim under the RA because even though the evaluation contained factual mistakes about the plaintiff's situation, it properly considered medically pertinent factors relevant to decisions to forcibly medicate. *Id.* at 228, 234. The court, therefore, determined that the plaintiff's complaint amounted to her disagreement with the outcome of the evaluation, *id.* at 232, and did not meet the standard for an actionable claim of

discrimination in the medical treatment context, which is that a plaintiff pleads discrimination through allegations that "the defendants made treatment decisions based on factors that are unrelated to, and thus improper to consideration of the inquiry in question." *Id*. at 234 (quotation and citation omitted).

Defendants also cite *Zlotnick* in which the plaintiff alleged that defendant—a residential care facility from which the plaintiff received care due to his intellectual disabilities—failed to implement proper safety measures to ensure adequate care of his disability. *Zlotnick*, 2021 WL 4993712, at *1–2, *5–6. The court held that the plaintiff did not present any allegations to suggest that the defendant's failures were motivated by his disability; instead, his claims were about inadequate care of his disability. *Id*.

Defendants' reliance on *McGugan* and *Zlotnick* is misplaced. First, unlike the plaintiffs in *McGugan*, 752 F.3d at 227, and *Zlotnick*, 2021 WL 4993712, at *6, who were being treated by the defendants specifically for their disabilities, Mr. Landau was not being treated by Defendants for his disability of OUD, but rather was treated for serious infections from diabetic foot ulcers. Dkt. 22 ¶¶ 25, 65, 139–41.[7] Second, McGugan and Zlotnick did not allege that they were denied the full and equal enjoyment of services. Instead, they alleged that the services they received to treat

---

[7] Additionally, under the RA, Mr. Landau was "otherwise qualified" for Defendants' services. In the context of receiving medical care, a person with a disability is "otherwise qualified" if they are eligible for a defendant's programs or activities for a need distinct from the disability they claim defendants discriminated against. *Griffin v. Doe*, 71 F. Supp. 3d 306, 319 (N.D.N.Y. 2014). In the cases cited by Defendants, the plaintiff's disability is what brought them to participate in defendant's services. See *Zlotnick*, 2021 WL 4993712 at *1; *McGugan*, 752 F.3d at 227–28; *Cushing v. Moore*, 970 F.2d 1103, 1109 (2d Cir. 1992) (plaintiff sought care from defendant opioid treatment program for care of his substance use disorder, the disability at issue in the case). In contrast, Mr. Landau was eligible to participate in Defendants' services because of diabetes-related foot infections, and alleges that while seeking treatment for the infections, he was denied services and discriminated against because of his disability of OUD.

their disabilities were faulty. *McGugan*, 752 F.3d at 227–28, 231–32; *Zlotnick*, 2021 WL 4993712, at *5. The *McGugan* court explained that, on its face, the RA prohibits three types of conduct: "(1) exclusion from participation in a federally funded program or activity, (2) denial of benefits of a federally funded program or activity, and (3) subjection to discrimination under a federally funded program or activity. McGugan alleges only the third type of conduct—subjection to discrimination under a federally funded program or activity." *McGugan*, 752 F.3d at 231. In contrast to McGugan and Zlotnick, Mr. Landau alleges that he was denied the benefits of Defendants' services, denied the full and equal enjoyment of Defendants' services, and was otherwise subject to discrimination. Dkt. 22 ¶¶ 157–247. Additionally, as explained below, Mr. Landau alleges that Defendants considered factors that were unrelated to, and thus improper to consideration of the inquiries in question. *Id*. ¶¶ 38–64.

> i.    *Defendants' refusal to administer methadone was not a medical judgment.*

Mr. Landau alleges that Defendants' denials of methadone in August 2020, and August 2021, were based on factors unrelated to and improper to consideration of the inquiry in question––the precise type of allegations that satisfy *McGugan*. *See McGugan*, 752 F.3d at 234. Mr. Landau alleges that he was prescribed methadone, a necessary and life-saving medication, by his opioid treatment program and that MOUD is the only form of evidence-based treatment for OUD. Dkt. 22 ¶¶ 3, 21, 38. Hospitals can administer methadone to admitted patients and failure to do so forces patients into medically inappropriate withdrawal. *Id*. ¶¶ 45–49. However, healthcare providers often fail to administer methadone because of stigma surrounding OUD and the medication used to treat it. *Id*. ¶¶ 34–37. Mr. Landau makes no allegations that Defendants' refusal to administer methadone while he was in the Hospital for treatment of his diabetes-related infections was due to a medical judgment about proper treatment of OUD. Rather, he asserts that Defendants' refusal to

administer methadone deprived him of the full and equal enjoyment of their services because of his disability. *Id*. ¶¶ 38, 148.

Courts have held that failure to treat disabilities with evidence-based care constitutes discrimination, not mere disagreement with a medical decision. *See Pesce*, 355 F. Supp. 3d at 46 (rejecting defendant's contention that the plaintiff merely disagreed with a medical decision when plaintiff was denied methadone pursuant to defendant's policy of denying methadone, without medical justification or individualized reasoning); *United States v. Asare*, No. 15 Civ. 03556 (AT) (AJP), 2017 WL 11567941, at *3 (S.D.N.Y. Mar. 2, 2017) (rejecting defendant's argument that their policy to deny care to people with HIV—a policy contrary to standard protocols that prevent the spread of blood borne infections in healthcare settings—was merely a decision about a patient's suitability for medical treatment, and further stating that such "a defense is inappropriate in a motion to dismiss"). As such, Mr. Landau has sufficiently alleged that while he was being treated for serious diabetes-related infections, Defendants' refusal to administer methadone denied him the full and equal enjoyment of their health services because of his highly stigmatized disability.

ii.    *Defendants' denial of home-based administration of intravenous antibiotics via a PICC line was unrelated to the medical decision about proper care for Mr. Landau's infections.*

Mr. Landau's claims regarding Defendants' denial of home-based administration of intravenous antibiotics via a PICC line on August 26, 2020, and January 21, 2021, are not claims of inadequate medical care and "a routine medical malpractice claim that a health care provider failed to appropriately appreciate a patient's history while rendering treatment," as Defendants suggest. Defs.' Br. at 9, 10. As an initial matter, Defendants' suggestion must fail based on the facts alleged, which do not allege a disagreement with the treatment of his infections, but rather that he was categorically denied a treatment modality because of his disability. Mr. Landau alleges

that on August 26, 2020, his infectious disease doctor ordered a PICC line, and he had the PICC line insertion procedure completed. Dkt. 22 ¶¶ 74–77. After the insertion procedure, other staff, including a team of primarily social workers and nurses, negated the decision of his treating doctor. *Id.* ¶¶ 79–97. The director of case management sought approval to remove the PICC line and deny Mr. Landau that treatment modality because of his history of OUD. *Id.* Then on January 21, 2021, after being admitted to the Hospital for another course of intravenous antibiotics, at discharge, Mr. Landau alleges that he was again categorically denied a PICC line because of his history of OUD, pursuant to Defendants blanket policies, procedures, and practices. *Id.* ¶¶ 125–26.

Mr. Landau has not alleged any disagreement with the medical plan ordered by his infectious disease doctors: intravenous antibiotics. Instead, Mr. Landau alleges that, separate from the medical decision about appropriate treatment for his serious infections, he was denied a benefit or service pursuant to a policy that blanketly denies people with a history of OUD access to PICC lines and home-based intravenous antibiotic administration. *Id.* ¶ 150. The treatment decision was to prescribe intravenous antibiotics to Mr. Landau. Defendants later denied the service and benefit of home-based intravenous antibiotic administration for reasons having nothing to do with how to best treat serious infections. Mr. Landau does not allege disagreement with medical decisions about a treatment course, but rather the categorical denial of benefits and services because of his disability.

Mr. Landau also alleges that Defendants improperly considered his former substance use when denying him the PICC lines on August 26, 2020, and January 21, 2021. Defendants cite *McGugan* and *Zlotnick* in support of their argument that cognizable claims of discrimination allege that treatment providers considered factors unrelated to, and thus improper to consideration of, the service in question. Defs.' Br. at 9, 10. Again, Mr. Landau does not allege disagreement with the

decisions of his infectious disease doctors to treat his infection with long-term intravenous antibiotics. Rather, he alleges that his former substance use was improper for Defendants to consider when denying him their benefits, services, and programs. Specifically, Mr. Landau alleges, "People with a diagnosed history of substance use disorder, including OUD that involved injection drug use, are eligible for PICC lines. With respect to PICC line placement decisions, medical literature treats patients with a history of OUD who no longer use illicit substances the same as patient with no such history. There is no distinction between PICC line placement decisions for people who have previously used drugs versus those who have not." Dkt. 22 ¶¶ 63, 64.

Mr. Landau's claims are similar to those in *Asare*, 2017 WL 11567941, at *3, where this Court held that the plaintiff's allegations that the defendant cosmetic surgeon's policy to deny services to people with HIV, despite the fact that HIV is irrelevant to providing services where universal precautions address any safety concerns, sufficiently alleged violations of the ADA. The court rejected the defendant's argument that their application of the policy was a lawful exercise of defendant's professional judgment and ruled that such a defense is inappropriate in a motion to dismiss. *Id.* at *2–3. Here, Mr. Landau similarly claims that consideration of his past substance use was not an appropriate consideration, and Defendants' denial of their services and benefits was discriminatory.

Defendants argue that Mr. Landau's allegations that Defendants failed to consider his individual circumstances support a claim of malpractice, rather than discrimination. Defs.' Br. at 8–9. However, one of the core principles of state and federal anti-discrimination law is that a person with a disability be evaluated as an individual—based on their own circumstances—rather than on stigma and assumptions about their disability. *See PGA Tour, Inc. v. Martin*, 532 U.S. 661,

690 (2001) (making clear that the ADA has basic requirements that "the need of a disabled person be evaluated on an individual basis"). Mr. Landau's allegation that he provided Defendants with information about his recovery, which Defendants chose to ignore because of their blanket policy, supports his claims of discrimination—including that he was discriminated against through the application of eligibility criteria that screened him out, denial of a reasonable accommodation, and blatant disregard of information necessary to assess whether he presented a "direct threat." *See United States v. Asare*, No. 15 Civ. 3556, 2018 WL 2465378, at *6 (S.D.N.Y. June 1, 2018) (explaining defendants must consider individual circumstances in deciding whether eligibility criteria are necessary or whether an accommodation is reasonable, and the failure to do so is "dispositive" proof of an ADA violation). The *Asare* court held, "By failing to evaluate a person's disabilities on an individual basis, Defendants have violated the ADA." *Id*. (quotation and citation omitted). *See also Deer Mountain Day Camp, Inc*., 682 F. Supp. 2d at 346 ("In making its direct threat determination, a public accommodation must: 'make an individualized assessment, based on reasonable judgment that relies on *current medical knowledge or on the best available objective evidence*....'") (quoting 28 C.F.R. § 36.208(c)). Mr. Landau has sufficiently alleged claims of discrimination, not medical malpractice or negligence.

**B. Deliberate indifference is not an element of any claim in this case; it is only a prerequisite for compensatory damages under the RA.**

In their Motion to Dismiss, Defendants state, flatly and without discussion, that the FAC "fails to address in any specific manner" allegations of intentional discrimination. Defs.' Br. at 9–10. The Second Circuit defines this showing as "deliberate indifference." *Loeffler v. Staten Island Univ. Hosp*., 582 F.3d 268, 275–77 (2d Cir. 2009). Two responses are in order. First, as Defendants acknowledge, deliberate indifference is a prerequisite for monetary damages under the RA. Defs.' Br. at 9–10. It is not an element of any claim in this case, *Loeffler*, 582 F.3d at 275, and a complaint

21

need only provide "a short and plain statement of the claim" with "a demand for the relief sought." Fed. R. Civ. P. 8(a)(1)–(2). Nothing more is required.

At any rate, a motion to dismiss is an inappropriate vehicle for a determination on deliberate indifference. As courts have observed, "deliberate indifference will often be a fact-laden question, for which bright line rules are ill-suited." *Goldman v. Brooklyn Ctr. for Psychotherapy, Inc.*, No. 15-CV-2572 (PKC) (PK), 2018 WL 1747038, at *3 (E.D.N.Y. Apr. 11, 2018) (disability discrimination claims) (quoting *Tesoriero v. Syosset Cent. Sch. Dist.*, 382 F. Supp. 2d 387, 398 (E.D.N.Y. 2005)); *Bravin v. Mount Sinai Med. Ctr.*, 58 F. Supp. 2d 269, 274 (S.D.N.Y. 1999) (noting in a disability discrimination case that a fact-intensive analysis, such as "the totality of defendant's efforts to accommodate the plaintiff and others similarly situated," needed to "be undertaken in order to determine whether defendant acted with deliberate indifference"); *see also Loeffler*, 582 F.3d at 275–77 (finding genuine issues of material fact with respect to deliberate indifference when a patient's requests for accommodations went "unheeded"). Even if allegations were somehow required, Mr. Landau alleged that he provided Defendants with information about his needs but they "chose to ignore this information." Dkt. 22 ¶¶ 149, 154. What is more, Defendants "chose to provide Mr. Landau with services they knew were not the first or best option available." *Id.* ¶ 156. These allegations alone satisfy deliberate indifference.

### C. The frequency of Mr. Landau's visits to the Hospital is irrelevant to his discrimination allegations.

Defendants imply that the fact Mr. Landau received ongoing treatment from Defendants is relevant to whether the Defendants discriminated against him as alleged. Defs.' Br. at 6. However, allegations of discrimination are no less valid simply because the defendant has not discriminated against a plaintiff in every encounter. *See Nieves v. Plaza Rehab. & Nursing Ctr.*, No. 20-cv-01191 (JLR) (OTW), 2023 WL 4763945, at *8 (S.D.N.Y. July 26, 2023). An individual with a disability

has a right "to benefit equally from each of these services and to participate equally at all points in time." *Proctor v. Prince George's Hosp. Ctr.*, 32 F. Supp. 2d 820, 827 (D. Md. 1998) (collecting cases). Indeed, "courts have focused on specific instances during the interaction between the disabled individual and the public accommodation or public entity." *Id.* Put another way, federal law does not contemplate a partial-credit standard. *Childress v. Fox Assocs., LLC*, No. 16 CV 931 CDP, 2018 WL 1858157, at *4 (E.D. Mo. Apr. 18, 2018) (granting summary judgment in favor of a deaf patron when a theater provided closed captioning for one performance on a preselected date because "[a] non-disabled, hearing person has the benefit of an expansive selection of performances to attend"), *aff'd*, 932 F.3d 1165 (8th Cir. 2019). As stated, Defendants' lack of discrimination on some occasions does not have any bearing on Mr. Landau's allegations of discrimination on these occasions.

Viewing the complaint is in the light most favorable to the plaintiff, with all facts alleged by Mr. Landau and reasonable inferences that can be drawn from them as true, Mr. Landau has sufficiently pled that he was denied the full and equal enjoyment or benefits of Defendants' services, or was otherwise discriminated against, because of his disability. Defendants engaged in disparate treatment and failed to accommodate Mr. Landau's disability. Therefore, Defendants' Motion to Dismiss should be denied.

Dated: February 14, 2024                          Respectfully submitted,
      New York, NY

                                                      LEGAL ACTION CENTER

                                                      By: */s/ Rebekah Joab*
                                                      Rebekah Joab
                                                      Diane Johnston
                                                      Jennifer Sinton
                                                      225 Varick St., 4th Floor
                                                      New York, New York 10014

(212) 243-1313
rjoab@lac.org

EISENBERG & BAUM, LLP

By: */s/ David John Hommel*
David John Hommel
24 Union Square East, PH
New York, NY 10003
(212) 353-8700
DHommel@eandblaw.com

*Attorneys for Plaintiff*